# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JUSTIN DEONTA STROM, SR.,** | )<br>) |
| Petitioner, | ) Case No. 7:19CV00073<br>) |
| v. | ) **OPINION**<br>) |
| **M. BRECKON, WARDEN,** | ) By: James P. Jones<br>) United States District Judge |
| Respondent. | ) |

*Justin Deonta Strom, Sr., Pro Se Petitioner; Michael A. Baudinet, Assistant United States Attorney, Roanoke, Virginia, for Respondent.*

Petitioner, Justin Deonta Strom, Sr., a federal inmate proceeding pro se, filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.[1] Strom contends that his sentence must be revisited in light of *United States v. Wheeler*, 886 F.3d 415, 425–26 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1318 (2019). Strom has also filed a Motion to Amend seeking to add a challenge the validity of his conviction, based on new evidence that allegedly taints his case. After review of the record and the parties' submissions, I conclude that the United States' Motion to Dismiss must be granted and that Strom's Motion to Amend must be denied as futile.

---

[1] Strom is confined at the United States Penitentiary Lee, which is located in this judicial district.

I.

In November of 2011, the Fairfax County, Virginia, Police Department and federal agents launched an investigation into the sex trafficking activities of the Underground Gangster Crips ("UGC"), a local street gang. Based on extensive victim interviews, physical surveillance, electronic evidence, and evidence gathered with the execution of multiple search warrants, law enforcement officers determined that UGC members and associates, led by Justin Strom, had engaged in the exploitation and victimization of at least eight juvenile females, ages sixteen and seventeen, as well as adult females, for more than five years, ending in March of 2012.

Strom was arrested on March 28, 2012, on a Criminal Complaint charging him and others with conspiracy to commit sex trafficking of a minor. A month later, a grand jury in the United States District Court for the Eastern District of Virginia returned a ten-count Indictment charging Strom with conspiracy to transport a juvenile to engage in a commercial sex act, in violation of 18 U.S.C. § 1594 (Count One); seven counts of sex trafficking of a juvenile, in violation of 18 U.S.C. §§ 1591(a)(1) and 2 (Counts Two, Four, and Six through Ten); and two counts of transportation of a minor to engage in criminal sexual activity, in violation of 18

U.S.C. §§ 2423 and 2 (Counts Three and Five). Indictment, ECF No. 47, *United States v. Strom*, No. 1:12cr00159 (E.D. Va.).[2]

On June 26, 2012, Strom pleaded guilty, pursuant to a written Plea Agreement, to Count Eight of the Indictment that charged him with sex trafficking of a juvenile identified as J.T. Strom agreed to pay restitution to his victims. In exchange for the plea, the United States agreed to dismiss the other counts against Strom.

Strom and the United States entered into an agreed Statement of Facts in support of the guilty plea. Strom thereby admitted, among other things, that he had

> posted, or caused to be posted, numerous messages on internet websites, through the use of a computer or interactive computer service, to persuade, induce, and entice females, including juveniles, to travel and engage in prohibited sexual conduct. These websites included Facebook, MySpace, Craigslist, and Datehookup, all of which are involved in interstate commerce. Strom knowingly misrepresented, or caused to be misrepresented, his identity and the identities of others involved in the enterprise, by using, or causing to be used [false names] on Facebook to send messages.

Statement of Facts ¶ 3, E.D. Va., ECF No. 68. Strom also agreed that had the case proceeded to trial, the United States had evidence to introduce to prove beyond a reasonable doubt that between 2006 and 2012, Strom "knowingly recruited, enticed, provided, and maintained at least eight juvenile girls to engage in commercial sex acts for the enterprise." *Id.* at ¶ 5.

---

[2] Hereafter, the docket of Strom's prosecution in the Eastern District of Virginia will be as cited as "E.D. Va., ECF No. ___."

In advance of sentencing, the probation office prepared a Presentence Investigation Report ("PSR") that included a detailed description of the evidence the United States had gathered about Strom's offense conduct with each of his eight victims. Included in the PSR was a reported interview with victim B.B., a seventeen-year-old girl who had initially resisted Strom's efforts to recruit her to prostitute herself. B.B. described an encounter with Strom when, after she told him her age, he asked her

> to have sex with him for money and told her she would have to have intercourse with him and [a codefendant] as an initiation. Strom then took out what she believed to be cocaine and told her to ingest it. She refused and slapped Strom's hand out of the way causing the cocaine to spill on Strom's lap. . . . Strom then struck her and slammed her head against the window of the vehicle. . . . [S]he sustained a cut above her right eye that eventually required medical treatment and stitches.
>
> [S]he was then forced to ingest the cocaine. Strom then took her from the car and walked her around the corner of an apartment building, while brandishing a knife. . . . Strom forced her to perform oral sex on him while he held a knife to her neck. . . . [W]hen she first refused, Strom cut her across her left forearm with the knife. . . . [S]he then performed oral sex on Strom. Before Strom ejaculated he told her to stand up and bend over so that he could finish having vaginal sex with her.

Mot. Dism. Ex. PSR ¶ 28–29, ECF No. 8. Thereafter, she was taken to an apartment "where she was forced to engage in vaginal intercourse against her will with fourteen unknown males. B.B. stated Strom was present during this incident and received approximately $1,000 afterwards from the men." *Id.* at ¶ 29.

The PSR found that under the U.S. Sentencing Guidelines Manual ("USSG") § 2G1.3(a)(2), Strom's Base Offense Level was 30. The PSR also recommended several enhancements, based on the offense conduct and relevant conduct from other victims' interviews about Strom's conduct toward them, as follows: a two-level increase under USSG § 2G1.3(b)(3)(B) for use of a computer to solicit a person to engage in prohibited sexual conduct with a minor; a two-level increase under USSG 2G1.3(b)(4)(A) because the offense involved the commission of a sex act or sexual contact; a two-level increase under USSG § 2G1.3(b)(2)(A) because Strom knowingly misrepresented his identity; a four-level increase under USSG § 3B1.1(a) for being a leader and organizer of the conspiracy; and a five-level increase under USSG § 4B1.5(b) as a repeat and dangerous sex offender against minors, giving him a Total Offense Level of 43. With his Criminal History Category V, the PSR scored Strom's sentencing range as life in prison. Strom did not file objections to the PSR.

In a Sentencing Memorandum filed with the sentencing court, Strom agreed that the PSR's description of his offense conduct was accurate. He took issue with the finding that he was a leader or organizer and asked to be sentenced commensurate with his codefendants, who received sentences ranging from 120 to 216 months.[3] At sentencing in September of 2012, the United States urged the court

---

[3] The PSR found that Strom "managed and supervised the other members of the conspiracy, recruited the prostitutes, and received the largest share of the profits." PSR at ¶ 51.

to sentence Strom to life in prison. Strom expressed remorse for his actions and asked for a term of years. The court departed below the guideline range and sentenced Strom to a term of forty years in prison. He did not appeal.

The court also ordered Strom to pay restitution to his victims. The PSR stated:

> For crimes of violence as defined in 18 U.S.C. 16, offenses against property (including any offense committed by fraud or deceit) or crimes relating to tampering with consumer products (18 U.S.C. 1365) which occurred subsequent to April 24, 1996, and all offenses involving sexual abuse, child abuse, domestic violence or telemarketing fraud, MANDATORY RESTITUTION to the victims is required pursuant to 18 U.S.C. 3663A.

PSR at ¶ 48. An order entered on September 14, 2012, directed that Strom was to pay $91,925.94 in restitution. E.D. Va., ECF No. 78.

In 2013, Strom filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, alleging, among other things, ineffective assistance of counsel for failing to file a notice of appeal. The court granted the motion as to that one claim and allowed Strom a belated appeal, which was unsuccessful. Strom filed a second § 2255 motion in May of 2015, which included a challenge to the court's use of conduct outside of the Plea Agreement in the calculation of his sentence. The court denied relief, and the court of appeals upheld that disposition on appeal. Strom has also filed motions under Rule 60(b), seeking to reopen his § 2255 proceedings, but without success. He previously filed an unsuccessful § 2241 motion in California attacking his conviction and sentence, when he was incarcerated in a federal prison

there. *Strom v. Matevousian,* No. 1:16-cv-01842 SKO HC, 2016 WL 7474889 (E.D. Cal. Dec. 29, 2016).

Strom filed his present § 2241 petition in February of 2019, challenging the validity of his sentence imposed in light of *Wheeler*, 886 F.3d 415. The respondent has filed a Motion to Dismiss, and Strom has responded, making the matter ripe for consideration. Strom has also filed a Motion to Amend his petition to raise an additional claim that newly discovered evidence taints the prosecution against him.

II.

Generally, federal prisoners "are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to 28 U.S.C.A. § 2255." *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). However, the "savings clause" of § 2255 allows a federal prisoner to seek relief under 28 U.S.C. § 2241 if he can show that § 2255 is "inadequate or ineffective to test the legality of his detention." *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000) (quoting 28 U.S.C. § 2255(e)). The requirements of the savings clause are jurisdictional. *Wheeler*, 886 F.3d at 425–26. Thus, unless the petitioner meets these requirements, a district court may not entertain his § 2241 petition that challenges the validity of a federal conviction or sentence. *Id.*

The United States Court of Appeals for the Fourth Circuit has found that § 2255 is inadequate and ineffective to test the legality of a *conviction* when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333–34. Strom's proposed amendment purports to present new evidence that invalidates his conviction. He presents, however, no authority suggesting that the offense conduct for which he was convicted — sex trafficking of a juvenile female — is no longer criminal. Accordingly, Strom has not met the second of the four factors required in *Jones* and thus has not shown that I have jurisdiction under the savings clause of § 2255 to address his new evidence claim in a § 2241 petition. I will, therefore, deny his Motion to Amend as futile.

In *Wheeler*, the Fourth Circuit outlined conditions in which the savings clause may be used to challenge an allegedly unlawful *sentence*. 886 F.3d at 428–29. Specifically, the Court held that § 2255 is inadequate and ineffective to test the legality of a sentence when all four of the following requirements are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Id.* at 429.

Strom's § 2241 petition, liberally construed, alleges these three grounds for relief under *Wheeler* and the savings clause: (a) the sentencing court erroneously calculated Strom's guideline range as though he had committed a crime of violence; (b) Strom is actually innocent of the conduct for which he received the § 4B1.5 enhancement, because the facts that supported it were not admitted or found beyond a reasonable doubt; and (c) USSG § 4B1.5, under which Strom received a five-level enhancement of his Base Offense Level as a repeat and dangerous sex offender against minors, is unconstitutionally vague. Strom bases each of these claims on the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), arguing that this decision changed the law retroactively in such a way that his sentence is now fundamentally defective. The respondent argues that Strom has not stated facts showing that I have jurisdiction under *Wheeler* and the savings clause to address his claims on the merits under § 2241. I agree.

In *Johnson v. United States*, 135 S. Ct. 2551, 2555–57 (2015), the Supreme Court struck down the so-called residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), as void for vagueness.[4] In *Dimaya*, applying

---

[4] ACCA defines "violent felony" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or constitutes "burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (residual clause italicized).

principles from *Johnson,* the Court held that a similar residual clause in 18 U.S.C. § 16(b), was unconstitutionally vague.[5] 138 S. Ct. at 1215–16. This definition is incorporated into other criminal statutes, such as the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(F), which was the definition at issue in *Dimaya*.

Strom's claims argue that the changes that these two decisions — *Johnson* and *Dimaya* — decided after his 2012 sentence and his 2015 § 2255 proceeding, make his sentence fundamentally defective so as to warrant relief under § 2241 and *Wheeler*.[6] To the contrary, I find that Strom has not satisfied the *Wheeler* factors, since he has not demonstrated any fundamental defect in his sentence related to these post-conviction legal changes.

---

[5] Section 16 defines the term "crime of violence" as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a *substantial risk that physical force against the person or property of another may be used in the course of committing the offense*.

18 U.S.C. § 16 (residual clause italicized).

[6] Strom also argues that he can bring his current claims under § 2241 because they would now be dismissed as procedurally defaulted if he tried to raise them in a § 2255. His contention is that the procedural bar makes § 2255 inadequate or ineffective to test the legality of his detention and places the claims within the savings clause in § 2255(e). This contention has no merit. *See In re Vial*, 115 F.3d at 1194 n.5 ("[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a § 2255 motion.") (citations omitted).

As an initial matter, neither *Johnson* nor *Dimaya* applies directly to Strom's case. He was not sentenced under the ACCA or the INA. While Strom's arguments in support of his claims overlap and are difficult to follow, he apparently believes that his enhanced sentence is rendered fundamentally defective considering the principles underlying these decisions.

In his first claim, Strom alleges that the court sentenced him "under a crime of violence," which increased his "mandatory guidelines."[7] Pet. 11, ECF No. 1. Strom centers this claim on the mention of "crime of violence" and 18 U.S.C. § 16(b) in the PSR and in the sentencing transcript. It is clear, however, that whether Strom committed a crime of violence, or not, played no role in the calculation of his sentencing guideline range.[8]

To the contrary, calculation of Strom's guideline range was based on the offense under 18 U.S.C. § 1591(a)(1) to which he pleaded guilty and relevant conduct regarding his victims in Counts Two, Four, Six, Seven, Nine, and Ten. The relevant conduct, included in the PSR without objection from Strom, was properly used to support enhancements of his offense level for computer use, leadership role,

---

[7] Strom's contention that the guidelines were mandatory is incorrect, because the guidelines were advisory only at the time of his conviction and sentencing in 2012. *See United States v. Booker*, 543 U.S. 220 (2005).

[8] Strom does not argue that *Dimaya* precludes restitution in his case, nor could he. It is undisputed that Strom's Plea Agreement specifically provided that he would pay restitution to the victims of all his crimes. PSR at ¶ 7, ECF No. 8.

misrepresentation of identity, sexual contact, and as a repeat and dangerous sex offender. *See, e.g., United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) (explaining that under USSG § 1B1.3, "[t]he defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them" at sentencing). Moreover, the excerpts Strom cites from his sentencing hearing have nothing to do with the statutory definition of the term "crime of violence." Rather, the court, in evaluating the sentencing factors under 28 U.S.C. § 3553(a), described Strom's offense and relevant conduct, which included numerous acts of egregious violence. For the stated reasons, I find no factual basis for jurisdiction to address Strom's first claim under § 2255(e) and *Wheeler*.

In Strom's second claim, he asserts that he is actually innocent of the conduct underlying the § 4B1.5 enhancement. He states that he was "never found guilty of being a repeat and dangerous sex offender [and] did not admit to any of this conduct and it has never been proven beyond a reasonable doubt." Pet. 14, ECF No. 1. This argument is foreclosed by the Statement of Facts to which Strom agreed as part of his Plea Agreement, which acknowledged that he engaged in sex trafficking of at least eight juvenile girls between 2006 and 2012. Statement of Facts ¶ 5, E.D. Va., ECF No. 68. This admitted conduct clearly meets the guideline definition of "a pattern of activity involving prohibited sexual conduct" that carries a five-level increase. USSG § 4B1.5(b). Furthermore, Strom does not point to any change in

law since his § 2255 proceedings that made his sentence under § 4B1.5(b) unlawful. I find no factual basis for jurisdiction to address Strom's second claim under § 2255(e) and *Wheeler*.

The third claim in Strom's petition asserts that the five-level enhancement he received under USSG § 4B1.5 is unconstitutionally vague under *Dimaya*. He develops his argument as follows: *Dimaya* found the term "crime of violence" to be unconstitutionally vague; the Career Offender guideline, USSG § 4B1.1, applies to defendants with prior convictions for crimes of violence; § 4B1.1 works "in a coordinated manner" with USSG § 4B1.5; therefore, § 4B1.5 is also unconstitutionally vague. Pet. 15–16, ECF No. 1. This claim fails for multiple reasons.

First, the two guideline sections Strom references do not work together, as he claims. Instead, if § 4B1.1 applies, then § 4B1.5 does not, and vice versa. USSG § 4B1.5(b). Second, Strom's assertion that *Dimaya* invalidated the definition of "crime of violence" in the sentencing guidelines, specifically in the Career Offender guideline, USSG § 4B1.1, has been foreclosed by Supreme Court precedent. In *United States v. Beckles*, 137 S. Ct. 886 (2017), the Court upheld the sentencing

guidelines' analogue to the residual clause.[9] *Dimaya* did not alter that holding or invalidate any sentencing guidelines provisions.

Third, Strom's primary argument to invalidate USSG § 4B1.5 has already been addressed and rejected in his § 2255 proceedings. Contrary to his continued arguments, facts required to support guideline enhancements need not be admitted or found by a jury. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 USC § 3661; USSG § 1B1.4. So long as the information is reliable, the court may consider it in determining a sentence within statutory parameters. *United States v. Nichols*, 438 F.3d 437 (4th Cir. 2006); *see also Booker*, 543 U.S. at 233 (advisory guidelines permit judge at sentencing to consider facts not found by the jury). Furthermore, as discussed, Strom's Statement of Facts alone admitted sufficient facts to support application of the § 4B1.5 enhancement for being a repeat and dangerous sex offender against minors.

For these reasons, Strom has not demonstrated under the requirements of *Wheeler* that § 2255 is inadequate and ineffective to test the legality of his sentence. Consequently, this court has no jurisdiction to address the merits of his claims under

---

[9] The Sentencing Commission amended the definition of "crime of violence" in § 4B1.2 to eliminate the residual clause altogether, effective August 1, 2016.

§ 2241. I will grant the United States' Motion to Dismiss and dismiss Strom's claims for lack of jurisdiction. I will also deny his Motion to Amend as futile.

A separate Final Order will be entered herewith.

DATED: March 31, 2020

/s/ James P. Jones
United States District Judge